UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

| | |
|---|---|
| DAVID M. RODRIGUEZ, individually and on behalf of all others similarly situated, | **CLASS ACTION** **JURY TRIAL DEMAND** |
| Plaintiff, | |
| vs. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. _____/ | |

Plaintiff David M. Rodriguez, individually and as class representative on behalf of all others similarly situated, alleges the following against The Procter & Gamble Company ("P&G"):

**SUMMARY OF CLAIM**

1.      P&G, a multi-billion dollar American multinational consumer goods company, denies employment opportunities to entire categories of individuals authorized to work in the United States based on their alienage.  Specifically, P&G categorically denies non-citizen job applicants employment with the company in the United States if they are not U.S. permanent residents, refugees, or individuals granted asylum, notwithstanding the fact that the applicants are authorized to live and work in the United States.  This company-wide policy and/or practice constitutes intentional discrimination based on alienage and is unlawful under the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981.

## PARTIES

*Plaintiff David M. Rodriguez*

2. Plaintiff David M. Rodriguez is a 34-year-old Venezuelan national presently residing in Miami, Florida. Mr. Rodriguez was a part-time college student at Florida International University ("FIU"), who graduated on May 2017. He majored in business administration, with a concentration in finance and real estate, and minored in economics, graduating *summa cum laude* with a 3.96 GPA.

3. Mr. Rodriguez has authorization to work in the U.S. through the federal government's Deferred Action for Childhood Arrivals ("DACA") initiative.

*Defendant*

4. P&G is an American multinational consumer goods company headquartered in Cincinnati, Ohio. In 2016, P&G recorded $65.3 billion in sales.

5. P&G, by soliciting, conducting, and transacting business in the state of Florida, engages in continuous, permanent, and substantial activity within the state.

6. P&G is subject to Plaintiff's 42 U.S.C. § 1981 claim.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant conducts business within this District.

## FACTUAL ALLEGATIONS

10. P&G intentionally discriminates against non-citizen applicants for employment in the United States on the basis of alienage by utilizing a facially discriminatory policy and/or practice that categorically denies employment to non-citizens who are authorized to work in the U.S., but who are not U.S. permanent residents, refugees, or individuals granted asylum.

11. P&G further subjects non-citizen applicants for employment in the United States, on the basis of alienage, to additional requirements that are not imposed on U.S. citizen applicants, and rejects the non-citizen applicants who cannot satisfy the additional requirements.

12. In October 2013, P&G denied Mr. Rodriguez's application for an internship with the company on the basis of these policies and/or practices, even though he was legally authorized to work in the United States.

13. On or around December 5, 2012, Mr. Rodriguez was granted an Employment Authorization Document ("EAD") pursuant to DACA.

14. On or around September 2013, Mr. Rodriguez attended an on-campus information session at FIU advertising P&G's internship program. Eduardo Moreno, a P&G recruiter and FIU alumnus, and Jose Nuñez, an FIU student who had completed a P&G internship and worked as a company Campus Ambassador, hosted the information session.

15. During the information session, Mr. Moreno discussed the various types of internships P&G offered and informed the attendees that the internships were paid, were approximately 10 to 12 weeks in duration, and could be based in either Cincinnati, Ohio or Boston, Massachusetts.

16. Mr. Moreno also demonstrated how to apply for a P&G internship online by directing the attendees to P&G's career website, www.experiencePG.com.

17. After the information session, Mr. Moreno handed out his business card and instructed the attendees, including Mr. Rodriguez, to send him their resumes so that he could review the resumes and give the attendees advice about obtaining an internship with P&G.

18. The P&G Campus Ambassador, Jose Nuñez, also collected the attendees' contact information, including Mr. Rodriguez's, and later emailed them a sample of P&G's assessment exam, which is part of the internship application and was discussed in the information session.

19. Later that night, Mr. Rodriguez sent Mr. Moreno his resume, expressed his desire for a P&G internship, and requested input on his resume.

20. A few days later, Mr. Moreno emailed Mr. Rodriguez with some pointers for his resume.

21. After receiving Mr. Moreno's input and making revisions to his resume, Mr. Rodriguez went to P&G's career website, www.experiencePG.com, selected an internship application for P&G's Finance and Accounting Department, uploaded his resume, and answered the company's pre-screening questionnaire.

22. The pre-screening questionnaire included four questions about immigration status:  1) Are you currently a U.S. citizen or national, or an alien lawfully admitted for permanent residence, OR a refugee, OR an individual granted asylum, OR admitted for residence as an applicant under the 1986 immigration amnesty law? 2) Are you an individual admitted exclusively on a nonimmigrant visa, such as B, H, O, E, TN or L or an individual on the F-1 visa completing CPT (Curricular Practical Training) or OPT (Optional Practical Training)?  3) Are you an individual who is now completing the permanent residency process but has not yet been granted permanent residency?  4) Will you now, or in the future, require sponsorship for U.S. employment visa status (e.g., H-1B or permanent residency status)?

23. Mr. Rodriguez correctly responded "No" to each of the above questions. He then completed the rest of the pre-screening questionnaire and submitted it to P&G through its website.

24. According to the information given to attendees at the FIU information session, the next step in Mr. Rodriguez's application process was for him to complete two types of assessment tests online, which should have been sent to him as a web link via an email from P&G following the submission of his application.

25. Mr. Rodriguez never received the expected web link to P&G's assessment tests. After a week of waiting, he emailed both Mr. Moreno and Mr. Nuñez and inquired about the status of his application. Mr. Moreno responded via email and instructed Mr. Rodriguez to correct his graduation date on his online application and re-submit it to P&G, as Mr. Rodriguez had erroneously indicated that he would graduate from FIU on the Fall of 2014 instead of the Winter of 2014.

26. Mr. Rodriguez revised his online application and then emailed P&G's Recruitment Team on October 3, 2013, explaining that he needed to revise his graduation date. He also requested clarification of the company's immigration status criteria. Mr. Rodriguez's email explained that he possessed a valid work permit and did not need employer sponsorship to work lawfully in the United States.

27. A day or two after sending his email to P&G's Recruitment Team, Mr. Rodriguez received an internship rejection letter from P&G via email.

28. Mr. Rodriguez then emailed Mr. Moreno and asked him why P&G had rejected his application. Mr. Moreno responded via email and told Mr. Rodriguez that he was not eligible

to be hired because, "per P&G policy, applicants in the U.S. should be legally authorized to work with no restraints on the type, duration, or location of employment."

29. In addition to P&G's immigration status screening questionnaire and Mr. Moreno's statement regarding P&G's policy and/or practice, some P&G job postings specifically warn under the "Qualifications" section that "[c]andidates must be a U.S. citizen or national, refugee, asylee or lawful permanent resident."

## LEGAL WORK AUTHORIZATION

30. On June 15, 2012, President Obama announced that DHS, in an exercise of prosecutorial discretion, would not seek to remove certain young immigrants under an order now known as DACA.

31. DACA's purpose, as explained by President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[1]

32. DACA is a form of "deferred action," a discretionary grant of authorized stay by the federal government. Deferred action granted through DACA is valid for two years and is subject to renewal for an additional two years.

33. Under DACA, persons who are granted "deferred action" are eligible to obtain an EAD and a Social Security number. In other words, those who are granted "deferred action" and are in possession of an EAD are legally authorized to work in the United States.

---

[1] President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited May 30, 2017).

34. As of March 31, 2016, the United States Citizenship and Immigration Services ("USCIS") has approved over 1.3 million initial and renewal requests for DACA.[2]

35. DACA recipients are not the only class of non-citizens who possess legal work authorization, but are ineligible to work for P&G because of its facially discriminatory policy and/or practice that purposefully discriminates based on alienage. For example, P&G's requirements for entering into a work contract with the company also discriminate against visa-holders who are legally authorized to work in the United States, as well as other recipients of deferred action, including crime victims and survivors of severe forms of trafficking.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings his class allegations under Fed. R. Civ. P. 23(a), (b)(2), (c)(4) and (b)(3) on behalf of a class defined as follows: All non-citizens, who are within the jurisdiction of the United States and legally authorized to work in the United States, who were denied employment with P&G in the United States under the company's policies and/or practices for hiring non-citizens, between July 17, 2013 and the date of judgment in this action (the "Class").

37. Plaintiff is a member of the Class.

38. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. P&G has offices throughout the United States, USCIS has approved over 1.3 million initial and renewal requests for DACA, and there are thousands of other individuals who, despite having work authorization, do not meet P&G's requirements for

---

[2] USCIS, NUMBER OF I-821D, CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS BY FISCAL YEAR, QUARTER, INTAKE, BIOMETRICS AND CASE STATUS: 2012-2017 (Dec 31), *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/daca_performancedata_fy2017_qtr1.pdf (last visited May 30, 2017).

employment. Plaintiff does not know the precise number of Class Members – this information is in P&G's possession.

39. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is P&G's policy or practice to reject job applicants or terminate current workers who are legally authorized to work in the United States because they are not U.S. citizens, U.S. permanent residents, refugees, or individuals granted asylum; (2) whether P&G's policy as set forth above deprives Plaintiff and the Class of the right to contract for work in violation of 42 U.S.C. § 1981; (3) whether Plaintiff and the Class suffered harm by reason of Defendant's unlawful policy; (4) whether Plaintiff and the Class are entitled to back pay relief; (5) whether Plaintiff and the Class are entitled to compensatory damages; (6) whether Plaintiff and the Class are entitled to punitive damages; (7) what equitable and injunctive relief for the Class is warranted; and (8) the scope of a resulting permanent injunction.

40. Plaintiff's claims are typical of the claims of the Class: (1) Plaintiff was within the jurisdiction of the United States and not a citizen of the United States; (2) Plaintiff was legally authorized to work within the United States; (3) Plaintiff applied for a position at P&G; and (4) Plaintiff was rejected because of alienage. All of these claims are substantially shared by each and every Class Member. All of the claims arise from the same course of conduct by Defendant, and the relief sought is common.

41. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no conflict with any Class Member. Plaintiff is committed to the goal of altering P&G's hiring requirements to end its discrimination against Plaintiff and others who are legally authorized to work in the United States.

42.     Plaintiff has retained counsel competent and experienced in complex employment discrimination class actions.

43.     The universe of people affected by P&G's unlawful policy is ascertainable through Defendant's records and therefore the proposed class is ascertainable.

44.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because P&G has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.  P&G has refused to hire and/or has terminated non-citizens, ostensibly because they are not citizens, green card holders, refugees, or individuals granted asylum, *i.e.*, the Class.  The Class Members are entitled to injunctive relief to end P&G's common, uniform, unfair, and discriminatory policy and/or practice, including priority instatement and other make-whole relief.

45.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable.  The Class Members have been damaged and are entitled to recovery as a result of P&G's common, uniform, unfair, and discriminatory policy and/or practice.  Damages are capable of measurement on a class-wide basis and will be calculated based on the wages lost due to P&G's unlawful policy and/or practice.  The propriety and amount of punitive damages are based on P&G's conduct, making these issues common to the Class.  Plaintiff and the Class will rely on common evidence to resolve their legal and factual questions.  There are no pending actions raising similar claims.  The proposed representative for the Class is a Florida resident.

Defendant engages in continuous, permanent, and substantial activity in Florida. There will be no undue difficulty in the management of this litigation as a class action.

## COUNT I – Alienage Discrimination
(42 U.S.C. § 1981)

46. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

47. Plaintiff brings this claim on his own behalf and on behalf of the Class.

48. Plaintiff is a person within the jurisdiction of the United States.

49. Plaintiff is an alien.

50. Plaintiff is legally authorized to work in the United States.

51. P&G has discriminated against Plaintiff and the Class on the basis of alienage by rescinding or denying them contracts to work or deterring them from work opportunities because they are not U.S. citizens, permanent residents, refugees, or individuals granted asylum by the United States.

52. P&G's intentional discrimination against Plaintiff and the Class has interfered with their right to make and enforce work contracts.

53. Defendant's facially discriminatory policy and/or practice of denying work opportunities to Plaintiff and the Class based on their alienage, despite their legal authorization to work in the United States, has harmed Plaintiff and the Class and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

54. Plaintiff and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiff and the Class he seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

55. Defendant's conduct has caused, and continues to cause, Plaintiff and the members of the Class substantial losses in earnings and other work benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

56. Certification of the case as a class action on behalf of the proposed Class;

57. Designation of Plaintiff David M. Rodriguez as a representative on behalf of the Class;

58. Designation of Plaintiff's counsel of record as Class counsel;

59. A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

60. A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein; an order restoring Plaintiff and Class members to their rightful positions at P&G, as applicants, contractors, or employees, or in lieu of instatement or reinstatement, an order for front pay (including interest) and benefits;

61. Back pay (including interest and benefits) for the Plaintiff and Class Members;

62. All damages sustained as a result of P&G's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

63. Exemplary and punitive damages in an amount commensurate with P&G's ability to pay and to deter future conduct;

64. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

11

65. Pre-judgment and post-judgment interest, as provided by law; and

66. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: July 17, 2017

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**

/s/ *Jason S. Mazer*
**Jason S. Mazer**
Florida Bar No. 0149871
jmazer@vpl-law.com
**Cary D. Steklof**
csteklof@vpl-law.com
Florida Bar No. 86257
100 S.E. 2nd Street, 30th Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558

and

**OUTTEN & GOLDEN LLP**
**Patrick David Lopez\***
pdl@outtengolden.com
**Sally J. Abrahamson\***
sabrahamson@outtengolden.com
601 Massachusetts Avenue
Second Floor, West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile (202) 847-4410

**Ossai Miazad**\*
om@outtengolden.com
**Olivia J. Quinto**\*
ojq@outtengolden.com
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

**The Mexican American Legal Defense and Educational Fund**
**Thomas A. Saenz**\*
tsaenz@MALDEF.org
634 S. Spring Street
11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (210) 224-5382

**Nina Perales**\*
nperales@MALDEF.org
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382

*Attorneys for the Plaintiff and Proposed Class*

*\*Pending Pro Hac Vice Admission*