UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-22652-CIV-WILLIAMS

DAVID M. RODRIGUEZ,

    Plaintiff,

vs.

THE PROCTER & GAMBLE COMPANY,

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on a motion to dismiss filed by Defendant, The Procter & Gamble Company ("PG"). (DE 17). Plaintiff David M. Rodriguez, filed a response in opposition (DE 22) and Defendant filed a reply (DE 29). For the reasons set forth below, the motion (DE 17) is **DENIED**.

I.    **BACKGROUND**

Plaintiff filed this action, on behalf of himself and others similarly situated, asserting a claim of alienage discrimination under 42 U.S.C. §1981. Plaintiff is a Venezuelan national residing in Miami, Florida, who is authorized to work in the U.S. under the government's Deferred Action for Childhood Arrivals ("DACA") initiative. (DE 1 ¶¶2-3). On or around December 5, 2012, Plaintiff obtained an Employment Authorization Document ("EAD") pursuant to DACA. (DE 1 ¶13). In September 2013, Plaintiff submitted his resume to Eduardo Moreno ("Moreno"), a PG recruiter who was recruiting college students to obtain internships with PG. (DE 1 ¶19). A few days later, Moreno emailed Plaintiff with pointers on how to improve his resume and, on that same date, Plaintiff submitted his application through PG's website. (DE 1 ¶¶14, 19, 20, 21). The

application required Plaintiff to answer a pre-screening questionnaire that asked the following questions: 1) Are you currently a U.S. citizen or national, or an alien lawfully admitted for permanent residency, or a refugee, or an individual granted asylum, or admitted for residence as an applicant under the 1986 immigration amnesty law? 2) Are you an individual admitted exclusively on a nonimmigrant visa, such as B, H, O, E, TN or L or an individual on the F-1 visa completing CPT (Curricular Practical Training) or OPT (Optional Practical Training)? 3) Are you an individual who is now completing the permanent residency process but has not yet been granted permanent residency? 4) Will you now, or in the future, require sponsorship for U.S. employment visa status (e.g., H-1B or permanent residency status)?  (DE 1 ¶22).  Plaintiff responded "No" to each question.  (DE 1 ¶23).

After a week of waiting to receive PG's assessment tests, Plaintiff emailed Moreno to check on the status of his application.  (DE 1 ¶22).  After corresponding with Moreno, Plaintiff revised his application and emailed PG's recruitment team to inform them that he had a valid work permit and did not need sponsorship.  (DE 1 ¶26).  One or two days later, Plaintiff received a rejection letter from PG.  (DE 1 ¶26).  Afterward, Moreno told Plaintiff that he was not eligible to be hired because "per P&G policy, applicants in the U.S. should be legally authorized to work with no restraints on the type, duration, or location of employment."  (DE 1 ¶28).  Additionally, Plaintiff learned that some PG job postings specifically state under the "Qualifications" section that "[c]andidates must be a U.S. citizens or national, refugee, asylee or lawful permanent resident."  (DE 1 ¶29).  On these facts, Plaintiff advances a cause of action for alienage discrimination against PG.

2

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations presented. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## III.  DISCUSSION

The only disputed issue, in the instant motion, is whether Plaintiff has stated a claim for alienage discrimination by sufficiently pleading that PG refused to hire him, and others similarly situated because of their non-citizen status. The Court finds that Plaintiff has sufficiently stated a claim.

3

Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens…" 42 U.S.C. § 1981 (a).  The statute prohibits discrimination based on race or alienage in the making and enforcement of contracts, including employment contracts.  See *Anderson v. Conboy*, 156 F.3d 167, 170, 180 (2d Cir. 1998).  To state a claim under section 1981, a plaintiff must allege that (1) he or she is a member of a protected class, (2) the defendant intentionally discriminated against him or her on the basis of membership in that protected class; and (3) the discrimination concerned one of § 1981's enumerated activities.  See *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004); *Juarez v. Northwestern Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 367 (S.D.N.Y. 2014).[1]

PG does not dispute that the Complaint sufficiently alleges prongs one and three.  However, PG argues that Plaintiff fails to state a claim, because Plaintiff admits in his complaint that PG's decision not to hire him was based on his immigration status and not his citizenship.  (DE 17 at 5).  Because the complaint admits that both citizens and non-citizens were invited to apply for contracts with PG, PG argues that "[a]t best, then, the Complaint alleges that P&G discriminated against individuals with temporary immigration statuses, a claim that is not cognizable under Section 1981."  (DE 17 at 6).  The Court disagrees.

---

[1] *Jackson* dealt with discrimination based on race. However, it is well established that section 1981 also prohibits discrimination based on alienage. *Wright v. Southland Corp.*, 187 F.3d 1287, 1298 (11th Cir. 1999) ("Refusing to hire an individual on the basis of alienage is illegal under 42 U.S.C. § 1981").

4

Plaintiff alleges in the complaint that PG discriminated against him based on his status as a non-citizen. (DE 1 ¶¶10-13). In support of this allegation, Plaintiff states that a PG recruiter told him that PG only hires applicants that are "legally authorized to work with no restraints on the type, duration, or location of employment" and that in its job postings PG states that "[c]andidates must be a U.S. citizen or national, refugee, asylee or lawful permanent resident." (DE 1 ¶¶28-29). The issue is whether Plaintiff has properly pled "purposeful discrimination" as required by section 1981. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). The test for purposeful or intentional discrimination "is the same as the formulation used in Title VII discriminatory treatment cases." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citations omitted). "[P]roof of a facially discriminatory employment policy ... is direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).

In *Juarez*, the plaintiff was a DACA recipient who was denied employment based on Northwestern Mutual's policy to only hire U.S. citizens and green card holders. 69 F. Supp. 3d at 368. There, on strikingly similar facts, the court found that Northwestern Mutual's policy impermissibly discriminated against a subclass of lawfully present aliens. *Id.* The court reached this conclusion because "(1) § 1981's protection against discrimination extends to all lawfully present aliens; (2) a plaintiff need not allege discrimination against all members of a protected class to state a claim under § 1981;

5

and (3) a plaintiff can plead intentional discrimination by alleging that the defendant acted pursuant to a facially discriminatory policy requiring adverse treatment based on a protected trait." *Id.* at 368-69. As is the case here, the critical issue in *Juarez* was whether the plaintiff had properly pled that Northwestern Mutal purposefully discriminated against him based on alienage. The court explained that one way to plead intentional discrimination "is to point to a law or policy that expressly classifies people on the basis of a protected characteristic." *Id.* at 370. Therefore, the court concluded that "allegations that [plaintiff's] application was rejected pursuant to a policy that expressly denies employment to lawfully present aliens without green cards—a protected subclass—suffice to state a claim under § 1981." *Id.* The Court finds this reasoning persuasive.

Here, PG's policy, as alleged in the complaint, could be construed to discriminate against a subset of legal aliens, which are a protected class under section 1981. And it is well established that plaintiff need not allege discrimination against the whole class to establish a section 1981 claim. *See Connecticut v. Teal*, 457 U.S. 440, 454 (1982) ("Under Title VII, a racially balanced workforce cannot immunize an employer from liability for specific acts of discrimination."). Despite PG's argument that at most, PG discriminated based on immigration status, at the pleadings stage, the Court may only rely on the allegations stated in the Complaint, which in this case assert a "facially discriminatory employment policy," against a subclass of lawfully present aliens.[2] *Juarez*,

---

[2] The cases cited by PG do properly establish that "alienage discrimination is discrimination on the basis of citizenship, not immigrant status." *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926 (E.D.N.Y. May 24, 2010); *see also Talwar v. Staten Island Univ. Hosp.*, No, 12-CV-0033, 2014 WL 5784626 (E.D.N.Y. Mar. 31, 2014); *Camara v. Schwan's Food Manufacturing, Inc.*, No. Civ. A. 04-121-JGW, 2005 WL 1950142 (E.D. Ky., Aug. 15, 2005). *Vaughn* and *Talwar*, however, were not decided on

69 F. Supp. 3d at 370. And as the court acknowledged in *Juarez*, even if Defendant has lawful business reasons to reject applications from DACA recipients, those reasons cannot be properly determined on a motion to dismiss. *Id.* at 371.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has sufficiently stated a claim under section 1981 and Defendant's motion to dismiss (DE 17) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 30th day of March, 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

a motion to dismiss and are distinguishable on the facts. Moreover, while *Camara* was decided on a motion to dismiss, the Parties had undergone substantial discovery that was relevant to the Court's decision, and, in any event, the plaintiff in *Camara* did not allege alienage discrimination in the complaint.