UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:17-cv-22652-KMW

DAVID M. RODRIGUEZ

    Plaintiff,

v.

THE PROCTER & GAMBLE COMPANY

    Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant's motion to certify the Court's June 10, 2020 summary judgment order for interlocutory appeal. (DE 143.) Plaintiff filed a response in opposition (DE 147) and Defendant filed a reply (DE 148). On August 26, 2020, the Court heard oral arguments on the motion. For the reasons discussed below, the motion is **DENIED**.

### I.   RELEVANT BACKGROUND

Plaintiff, David M. Rodriguez ("Rodriguez"), is a DACA recipient with legal work authorization. In 2013, he applied for a twelve-week finance and accounting internship at Procter and Gamble ("P&G"). This action arises out of P&G's rejection of his application due to its hiring policy for non-citizens. In 2013, through an online screening questionnaire, P&G automatically rejected at the first step of the application process all non-citizen applicants except for legal permanent residents, asylees, and refugees. Plaintiff initiated a putative class action on behalf of DACA recipients and other work-authorized non-citizens claiming that the policy is facially discriminatory on the basis of alienage in violation of 42 U.S.C. § 1981 ("Section 1981").

On May 10, 2019, P&G filed a motion for summary judgment. (DE 106.) Among other arguments, P&G asserted that: (1) Plaintiff does not belong to a class protected under Section 1981 because he is a DACA recipient and (2) P&G's policy classified on the basis of immigration status, not alienage. P&G's briefing for the first argument consisted of two and half pages. (*See id.* at 7-10.) Relying exclusively on three cases[1], P&G argued that Section 1981's protections do not extend to immigrants who are not lawfully present in the United States. (*See id.* at 7-8.) Citing *Estrada v. Becker*, 917 F.3d 1298 (11th Cir. 2019), P&G then argued that as a DACA recipient, Plaintiff is not a lawfully present immigrant and, therefore, is not entitled to Section 1981's protections. (*See id.* at 8-9.) While this argument depends on statutory interpretation, P&G cited to no statutory text, legislative history, or provisions in Title VII or IRCA to support its position.

P&G briefed its second argument in a similarly terse fashion. (*See id.* at 10-13.) In three and a half pages, and relying solely on non-binding cases, Defendant claimed that classification based on immigration status does not constitute unlawful alienage discrimination under Section 1981.[2] (*Id.* at 10.) P&G argued that its policy classified solely on the basis of immigration status because only certain non-citizens were automatically rejected and P&G had routinely hired permanent residents, asylees, and refugees.

---

[1] *Takahashi v. Fish and Bone Commission*, 334 U.S. 410 (1948), *Anderson v. Conboy*, 156 F.3d 167 (2d Cir. 1998), and *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014).

[2] *See Talwar v. Staten Island Univ. Hosp.*, 2014 WL 5784626 (E.D.N.Y. Mar. 31, 2014); *Vaughn v. City of New York*, 2010 WL 2076926 (E.D.N.Y. May 24, 2010); *Camara v. Schwan's Food Manufacturing, Inc.*, 2005 WL 1950142 (E.D. Ky. Aug. 15, 2005).

The Court rejected both arguments in its June 10, 2020 order denying Defendant's motion for summary judgment ("Order"). (DE 142.) First, the Order explained that Section 1981's statutory text and legislative history indicate that "the statute's protection against employer alienage discrimination applies to all work-authorized immigrants" and "Congress did not express a clear intent to exclude subclasses of immigrants from its protection." (DE 142 at 16.) Accordingly, the Court concluded that Section 1981's protections extends to DACA recipients because, notwithstanding their undocumented status, they are legally work-authorized. (*Id.*) The Court further noted that the decisions in *Takahashi*, *Anderson*, and *Juarez* did not preclude this conclusion, as those courts had no occasion to decide whether a work-authorized immigrant is excluded from Section 1981's protection if he or she was not lawfully present in the country. (*Id.* at 21-24.)

Second, the Court held that the policy was facially discriminatory on the basis of alienage. (*Id.* at 24-31.) The policy asked applicants "[a]re you currently a U.S. citizen OR national," and automatically rejected those who could not answer "YES" and did not fall within one of three exceptions. The Court found that by using lack of U.S. citizenship as a criterion for exclusion, P&G had explicitly singled out non-citizens and subjected them to less favorable treatment. (*Id.* at 26.) The Order explained that P&G's cited cases—*Vaughn*, *Talwar*, and *Camara*—failed to persuade that the policy classified only on the basis of immigration status, as those cases did not involve a similar policy that categorically denied employment to large swaths of work-authorized non-citizens. (*Id.* at 28-29.)

On July 2, 2020, Defendant filed the instant motion seeking to certify the Order for interlocutory appeal. (DE 143.) Specifically, P&G seeks appellate review of two

3

questions it contends were resolved by the Court: (1) "[w]hether the implied cause of action under 42 U.S.C. § 1981 extends to aliens who are not lawfully present in the United States?" and (2) "[w]hether a facial classification based on immigration status necessarily constitutes prohibited alienage discrimination under § 1981?" (*Id.* at 2.) In an effort to demonstrate that a substantial ground for difference of opinion exists as to these issues, P&G devoted the majority of its motion presenting entirely new arguments not previously raised in its motion for summary judgment and, consequently, not addressed by the Plaintiff or considered by the Court. For the reasons discussed below, P&G's motion is **DENIED**.

## II. **DISCUSSION**

### A. **Legal Framework**

The Court's summary judgment Order is non-final and must be certified for interlocutory appeal under 28 U.S.C. § 1292(b) before Defendant can pursue immediate appeal. Three factors are relevant in deciding whether an order merits interlocutory appeal under Section 1292(b): "(1) whether the case presents a 'controlling question of law'; (2) whether there is a 'substantial ground for difference of opinion'; and (3) whether the appeal will 'materially advance the ultimate termination of the litigation.'" *Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007). The burden is on P&G, the moving party, to establish these elements.

In the Eleventh Circuit, "the great bulk of [appellate] review must be conducted after final judgment, with § 1292(b) interlocutory review being a rare exception." *McFarlin v. Conseco Servs.*, 381 F. 3d 1251, 1257-50 (11th Cir. 2004). Accordingly, there is a "strong presumption against interlocutory appeals." *United States v. One Parcel of Real*

*Prop. With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985); *see also Reyes v. BCA Fin. Servs., Inc.*, 2018 WL 2849768, at *3 (S.D. Fla. June 8, 2018) ("Certification is not an appropriate vehicle for early appellate review of hard cases and should be denied except in rare circumstances.") (citation omitted).  Even when all three elements are satisfied, the district court and Eleventh Circuit have "discretion to turn down a § 1292(b) appeal."  *McFarlin*, 381 F.3d at 1259.

B. **Controlling Question of Law**

This factor is satisfied if the Order has resolved questions of "pure law" that can be reviewed "quickly and cleanly without having to study the record."  *McFarlin*, 381 F.3d at 1258.  "A question is controlling when it is 'outcome determinative.'"  *Javier Rivera v. Sellers*, 2019 WL 2583634, at *3 (S.D. Ga. June 21, 2019) (citation omitted).

P&G seeks appellate review of two questions it claims were resolved by the Order: (1) "[w]hether the implied cause of action under 42 U.S.C. § 1981 extends to aliens who are not lawfully present in the United States?" and (2) "[w]hether a facial classification based on immigration status necessarily constitutes prohibited alienage discrimination under § 1981?"  (DE 143 at 2.)  P&G notes that the Court described these questions as "purely legal" issues in the Order.  (*Id.* at 3.)  It also contends that had the Court resolved either in its favor, P&G would have been entitled to summary judgment.  (*Id.*)  Plaintiff argues that the questions articulated in P&G's motion mischaracterize the issues actually resolved by the Order.  (DE 147 at 14-17.)  However, Rodriguez does not dispute that the issues that were actually decided by the Court are controlling questions of law.

The Court agrees with Rodriguez that the questions framed in P&G's motion do not accurately articulate those briefed by the parties and considered by the Court.  P&G's

5

first question is misleading because it suggests that the Court decided whether Section 1981's protections extend to unlawfully present aliens generally, including those lacking work authorization. In addition, it intimates that the Court had the opportunity to consider P&G's "implied cause of action" argument. In reality, the Court reviewed and decided the narrower issue of "whether Section 1981's protections extend to non-citizens *who possess legal work authorization*, but who were not 'lawfully admitted.'" (Order at 16) (emphasis added). In doing so, it made clear that "the Court is not finding that Section 1981 protects undocumented immigrants who lack any lawful work authorization." (*Id.* at 17, n. 12.) It should be noted that P&G acknowledges that its "implied cause of action" argument was not raised in its motion for summary judgment. (*See* DE 143 at 10, n. 10.)

As to the second question, P&G's fails to mention or in any way reference its specific policy, therefore suggesting that the premise of the Court's decision is whether *any* classification based on immigration status is per se unlawful under Section 1981. In fact, the Court limited its consideration to whether P&G's specific policy—that automatically rejected at the first step of the application "all work-authorized non-citizens, except those specifically identified as exempt"—was facially discriminatory based on alienage.[3] (Order at 26.) Again, the Court had no occasion to rule on the legality of any other policy or classification, including those identified in P&G's motion.[4]

---

[3] As framed in P&G's motion, this question does not appear to be a "controlling" question of law. If the Eleventh Circuit concludes that classification based on immigration status does not always constitute alienage discrimination under Section 1981, it would likely explain under which circumstances such classification is lawful or unlawful. This case could not be resolved until this ruling is applied to the facts of this case. In other words, the outcome of this case turns on the separate issue of whether P&G's specific policy is discriminatory based on alienage.

[4] P&G explains that the Court's ruling would have a broad impact on employers. (DE 143 at 17.) The Court disagrees. Its holding is limited to P&G's specific policy. In addition, its reasoning for finding P&G's questionnaire to be discriminatory on the basis of alienage does not extend to the

P&G's characterization of the questions resolved in the Order exaggerates their scope, and in turn, the impact of the Court's narrowly cabined rulings. While this inaccurate recitation alone is a sufficient basis for the Court to deny the motion[5], the Court will assume Defendant seeks to certify the Order for interlocutory appeal as to the two questions actually resolved by the Court: (1) "[w]hether Section 1981's protections extend to non-citizens who possess legal work authorization, but who were not 'lawfully admitted,'" and (2) whether a policy that "automatically rejected—at the first step of the application process—all work authorized non-citizens, except those specifically identified as exempt" is facially discriminatory on the basis of alienage. (Order at 16, 26.) The Court finds both questions to be controlling questions of law.

C. **Substantial Ground for Difference of Opinion**

Where the appellate court is in "complete and unequivocal" agreement with the district court, a "substantial ground for difference of opinion" does not exist. *McFarlin*, 381 F.3d at 1258. Courts in this circuit have explained that "to demonstrate the existence of a substantial ground for difference of opinion, the appellant 'must show that at least two courts interpret the legal principle differently.'" *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 3433147, at *3 (S.D. Fla. June 23, 2020) (citations

---

scenarios set forth in the motion. While the Order might call into question the lawfulness of similar policies that explicitly and categorically bar the employment of all work-authorized non-citizens except for a few subclasses, Defendant fails to identify a single employer that maintains such a policy. In fact, P&G itself abandoned its policy in 2016.

[5] *See Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1363 (N.D. Ga. 2013) ("[t]he four alleged controlling questions the County Defendants assert to justify an interlocutory appeal are manufactured, wholly inaccurate recitations of the Court's ruling, and/or have no relation to the Court's Order. Accordingly, the Court does not find that an interlocutory appeal is warranted."); *Broad v. Hitts*, 2011 WL 5546298, at *1 (M.D. Ga. Nov. 14, 2011) ("Thus, this Court cannot authorize an appeal from a ruling it did not make.").

7

omitted). "[T]he district court has a duty to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Reyes*, 2018 WL 2849768, at *3 (citation omitted).

"Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion." *Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 261 F. Supp. 3d 1345, 1347 (M.D. Ga. 2017) (citing *U.S., ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F.Supp.2d 1374, 1379 (N.D. Ga. 2010)). Similarly, "the mere claim that the district court's ruling is incorrect does not support a finding that there is a substantial ground for difference of opinion." *Reyes*, 2018 WL 2849768, at *3 (citation omitted).

### 1. Whether Section 1981's protections extend to non-citizens who possess legal work authorization, but who are not lawfully present in the country?

For this issue, P&G devotes its brief to predominantly new arguments that were not raised in its motion for summary judgment or considered by the Court.[6] Aware of this predicament, P&G claims that they are not "new" because they support its original position that "Section 1981 does not protect aliens who are not lawfully present in the United States." (DE 143 at 10, n. 10.)  P&G also cites several cases, none in the context

---

[6] Specifically, P&G argues for the first time that: (1) extending Section 1981's protections to DACA recipients would give them "broader employment rights than they would have under either DACA or IRCA"; (2) courts should be reluctant to extend a previously recognized implied cause of action to a new context; (3) the "legislative history of § 1981 does not support extending its protection to aliens who are not lawfully admitted"; (4) "the regulation of the private employment of undocumented aliens" should be committed to the political branches; (5) "the idea that Congress intended in 1870 to prohibit discrimination against undocumented aliens cannot be squared with the federal government's treatment of this issue before and after IRCA"; and (6) "the assumption that § 1981 protects aliens who are not lawfully present likewise cannot be squared with the history of IRCA or of Title VII of the Civil Rights Act of 1964." (*See* DE 143 at 6-15.)

8

of a motion for interlocutory appeal, contending that a party cannot forfeit "individual arguments" or "authorities" that bolster a previously-asserted argument. (*Id.*)

The Court is not persuaded by Defendant's explanation for its belated effort to supplement its briefing on the motion for summary judgment.  P&G does not explain its failure to include these particular discussions or citations in its motion or during oral argument.  Consequently, because courts have consistently rejected attempts to raise new arguments in a motion for interlocutory appeal, P&G's new arguments will not be considered at this juncture.  *See Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 4565775, at *4 n.6 (S.D. Ala. Aug. 31, 2016) ("None of these arguments or authorities were presented by plaintiffs in briefing the Motion for Judgment on the Pleadings. . . Courts have declined to certify interlocutory appeals grounded in newly raised arguments . . . it is highly unlikely that the Eleventh Circuit would even consider such newly raised arguments on appeal."); *Broad v. Hitts*, 2011 WL 5546298, at *2 (M.D. Ga. Nov. 14, 2011) ("[Defendant] cannot now raise new arguments for summary judgment in a motion for interlocutory appeal.").[7]

Putting aside its new arguments, P&G again cites to *Takahashi* and *Graham v. Richardson*, 403 U.S. 365 (1971) as authorities that conflict with the Court's ruling. However, neither supports the proposition that a substantial ground for difference of opinion exists as to this question.  As discussed in the Order, these cases are not Section 1981 challenges brought by work-authorized, undocumented immigrants against their

---

[7] *See also Fed. Trade Comm'n v. Surescripts, LLC*, 2020 WL 2571627, at *5 (D.D.C. May 21, 2020) ("Inserting new . . .  arguments into a § 1292(b) motion is 'a dubious practice at best,' because it undermines the settled principle that courts of appeals should not consider arguments that parties failed to make below.") (citation omitted); *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 2017 WL 4969354, at *4 (W.D. Ky. Sept. 26, 2017) ("A motion to certify for interlocutory appeal is not the place to raise new arguments.").

9

employers. Accordingly, the Supreme Court had no opportunity to decide the precise issue of whether these subclasses of immigrants are entitled to Section 1981's protection against employer alienage discrimination. Instead, both are constitutional challenges to state laws brought by lawfully present immigrants. The central issue in *Takahashi*, a case thoroughly distinguished in the Order, is whether a California law that denied commercial fishing licenses to all residents who were "ineligible to citizenship" was unconstitutional as applied to plaintiff, a lawfully present immigrant. *Takahashi*, 334 U.S. at 413. The Supreme Court found the law to be unconstitutional, "appearing to rely on both the Equal Protection Clause of the Fourteenth Amendment and Congress's exclusive power under Article I to control immigration." *Anderson v. Conboy*, 156 F.3d 167, 177 (2d Cir. 1998). In *Graham*, the Supreme Court considered the constitutionality of welfare laws in Arizona and Pennsylvania, as they applied to plaintiffs, who were lawfully present immigrants. Pennsylvania's law excluded all non-citizens from receiving state welfare benefits, while Arizona's law limited benefits to citizens and only those non-citizens who had resided in the state for a minimum number of years. The Supreme Court determined that the laws were unconstitutional under the Equal Protection Clause and preempted by overriding national policies in the area of immigration.

To be clear, *Takahashi* states that the Equal Protection Clause and the "laws adopted under its authority," including Section 1981, embody a general policy that "all persons lawfully in this country" shall not be subjected to state laws that discriminate on the basis of alienage. *Takahashi*, 334 U.S. at 420. *Graham* features similar language. *See Graham*, 403 U.S. at 378. P&G argues that this "reference to lawfully present aliens" means "by negative implication—that Congress did not intend to protect those who

10

entered illegally." (DE 143 at 10.) The Court disagrees. The purpose of the Supreme Court's emphasis on "lawfully present aliens" in these discussions is to describe the parameters of federal protection of lawfully present immigrants, an important component of the preemption analysis. This reference is not, however—as Defendant seems to suggest—, an advisory opinion as to whether immigrants who are not lawfully present are protected under the Equal Protection Clause and Section 1981.[8] And even if it was, non-binding language in a decision cannot satisfy P&G's burden in establishing that a substantial ground for difference of opinion exists as to this question. *See Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 825 (S.D. Fla. 2007) (denying motion for interlocutory appeal because the movant "has failed to demonstrate that at least two courts interpret this legal principle differently."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 2015 WL 11251735, at *2 (S.D. Fla. 2015) (same).

### 2. Whether P&G's hiring policy is facially discriminatory on the basis of alienage?

For this issue, P&G also raises new arguments not previously asserted in its motion for summary judgment, which will not be considered by the Court.[9] It also cites to the following language in *Vaughn* as opposing authority: "[d]iscrimination on the basis of

---

[8] When the Court did consider this issue in the context of the Equal Protection Clause in *Plyler v. Doe*, 457 U.S. 202 (1982), it concluded that undocumented immigrants are protected under the Fifth and Fourteenth Amendments, further undermining P&G's position that the language in *Takahashi* and *Graham* indicates that unlawfully present immigrants are not protected under the Equal Protection Clause or the laws adopted under its authority.

[9] P&G argues that: (1) if any classification based on immigration status is per se invalid under Section 1981, it would be unlawful for employers to favor hiring refugees as part of a refugee-assistance program, refuse to hire immigrants who are subject to a deportation order, or decline to hire non-citizens who need work visa sponsorship; (2) the Court's interpretation of Section 1981 is at tension with IRCA and its anti-discrimination provision; and (3) the distinction between pregnancy and gender discrimination—which were considered separate forms of discrimination before the passage of the Pregnancy Discrimination Act—provide an analogy for why immigration status classification is analytically distinct from alienage discrimination. (DE 143 at 15-20.)

11

a person's status as an immigrant to the United States is not alienage discrimination unless it is also motivated by the lack of U.S. citizenship." *Vaughn*, 2010 WL 2076926, at *10. (DE 143 at 18.)

*Vaughn*, distinguished in the Order, fails to demonstrate a substantial ground for difference of opinion as to this issue. First, *Vaughn* does not actually support P&G's claim that classification based on "immigration status"—a term P&G uses to mean the conditions of an immigrant's admission and stay—is distinct from alienage discrimination. The plaintiffs in *Vaughn* were public school teachers who sued New York City's department of education and several individual defendants under Title VII and Section 1981 claiming they were subjected to adverse treatment because of their Caribbean national origin. Two of the plaintiffs were non-citizens who also asserted claims for alienage discrimination under Section 1981. In explaining that "alienage discrimination is discrimination on the basis of citizenship status, not immigrant status," the court was distinguishing between national origin discrimination—*i.e.* mistreatment "based solely [on] an individual's birthplace or nation of origin"—and alienage discrimination, which is "motivated by the lack of U.S. citizenship." *Vaughn*, 2010 WL 2076926, at *10. Thus, *Vaughn* makes clear that discriminating against employees because they came from a certain country or region is not by itself a form of alienage discrimination. However, it did not address if discrimination against DACA recipients, or other immigrant statuses, is legally distinct from alienage discrimination.

*Vaughn* is also distinguishable because it did not involve a policy that categorically excludes all work-authorized non-citizens, except for a few subclasses. As such, it did

12

not consider whether a policy akin to P&G's is discriminatory on the basis of alienage.[10] However, the cases that have considered this issue have uniformly concluded that such policies are discriminatory on the basis of alienage. *See Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 371 n. 11 (S.D.N.Y. 2014) ("Here, there is no question that the alleged policy classifies people on the basis of alienage rather than national origin."); *Nyquist v. Mauclet*, 432 U.S. 1, 9 (1977) ("The important points are that s 661(3) is directed at aliens and that only aliens are harmed by it. The fact that the statute is not an absolute bar does not mean that it does not discriminate against the class."). For these reasons, the Court finds no tension between *Vaughn* and the Order's holding that P&G's policy discriminates on the basis of alienage.

Because P&G has failed to demonstrate a substantial ground for difference of opinion exists as to both questions, it is inappropriate for the Court to certify the Order for interlocutory appeal. Undeterred, Defendant argues that the Court should certify the Order because it presents "new legal questions" of "special consequence" for unidentified employers. (DE 143 at 2.) The Court declines this invitation where, as here, the elements of Section 1292(b) have not been met.[11] Courts in this circuit have consistently explained that a question of first impression is not itself a sufficient basis to grant certification. *See In re Pac. Forest Prod. Corp.*, 335 B.R. 910, 922 (S.D. Fla. 2005) ("It is simply not enough

---

[10] Instead, the court in *Vaughn* granted summary judgment in favor of the defendants on the plaintiffs' Section 1981 claims because the plaintiffs could not demonstrate a reasonable inference of alienage discrimination under the *McDonnell-Douglas* test.

[11] *Mohawk Industries v. Carpenter*, 558 U.S. 100 (2009) does not compel the Court to certify an order for interlocutory appeal merely because it presents novel issues with special consequence. By explaining that "[t]he preconditions for Section 1292(b) review . . . are **most likely** to be satisfied when a privilege ruling involves a new legal question or is of special consequence," *Mohawk Industries* makes clear that courts must still independently assess whether the elements of Section 1292(b) have been met before certification. *Id.* at 111 (emphasis added).

for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue."); *Nat'l Union Fire Ins. Co. of Pittsburgh*, 2015 WL 11251735, at *2 ("Whether or not this issue is 'uncharted legal territory' does not automatically generate [ ] a 'substantial ground for difference of opinion.'").

    D. **Materially Advance Ultimate Resolution of the Case**

Finally, the Court concludes that certification of the Order for interlocutory appeal will not materially advance the resolution of this case. Here, discovery has been completed, dispositive motions have been decided, and the case will be trial-ready as soon as the motion for class certification is resolved. *See In re Int'l Mgmt. Assocs., LLC*, 2019 WL 2250638, at *3 (N.D. Ga. Feb. 27, 2019) ("Normally, an interlocutory appeal will not 'materially advance the ultimate termination of litigation' when discovery has concluded and a case is ready for trial."); *In re Auto Dealer Servs., Inc.*, 81 B.R. 94, 97 (M.D. Fla. 1987) ("The Bankruptcy Court is approaching trial on the damages; discovery and other pre-trial matters have been completed. At this stage an interlocutory appeal would only delay the litigation, and ultimately prove more costly than going forward with trial."). In light of the advanced posture of this case, this factor weighs against certification. P&G may seek appellate review after the entry of a final judgment.

    III. **CONCLUSION**

For the reasons discussed above, P&G's motion to certify the Order for interlocutory appeal (DE 143) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 6th day of November, 2020.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

15