**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

---

**DAVID RODRIGUEZ, individually and on behalf of all others similarly situated,**

**Plaintiff,**

v.

**THE PROCTER & GAMBLE COMPANY,**

**Defendant.**

**No. 17 Civ. 22652**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS REPRESENTATIVE AND COUNSEL, AND <u>APPROVAL OF PLAINTIFF'S PROPOSED NOTICE OF SETTLEMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

    I.     PRE-SUIT OUTREACH ............................................................................. 2

    II.    OVERVIEW OF LITIGATION .................................................................... 2

    III.   SETTLEMENT NEGOTIATIONS ................................................................ 5

SUMMARY OF THE SETTLEMENT TERMS ...................................................... 6

    I.     PROGRAMMATIC RELIEF ....................................................................... 6

    II.    MONETARY RELIEF ............................................................................... 7

    III.   CLASS MEMBERS ................................................................................. 7

    IV.   INDIVIDUAL CLASS MEMBER RELIEF ................................................... 8

    V.    CLASS MEMBER RELEASES .................................................................. 9

    VI.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARD ............................... 10

    VII.  UNCLAIMED FUNDS ............................................................................ 11

    VIII. SETTLEMENT ADMINISTRATOR ........................................................... 12

CLASS ACTION SETTLEMENT PROCEDURE .................................................. 12

ARGUMENT ................................................................................................................ 13

    I.     PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT IS APPROPRIATE .. 13

           A.    *Plaintiff Faced Significant Risk at Trial (Factor 1)* .................................. 15

           B.    *The Settlement Is Fair Given the Range of Possible Recovery (Factors 2, 3).* ............................................................................... 16

           C.    *Litigation Would be Complex, Costly, and Long (Factor 4).* .................. 18

           D.    *The Class Will Likely Approve of the Settlement (Factor 5).* .................. 18

           E.    *The Parties Have Completed Sufficient Discovery to Evaluate the Claims and Defenses (Factor 6)* .................................................. 19

    II.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE. ............................. 20

|  | A. | *Numerosity Is Satisfied.* ............................................................................ | *20* |
|  | B. | *Commonality Is Satisfied.* ........................................................................ | *20* |
|  | C. | *Typicality Is Satisfied.* ............................................................................... | *21* |
|  | D. | *Plaintiff Will Adequately Protect the Interests of the Settlement Class.* ... | *22* |
|  | E. | *Certification Is Proper Under Rule 23(b)(2).* ........................................... | *23* |
|  | F. | *Certification Is Also Proper Under Rule 23(b)(3).* ................................... | *24* |
|  | | 1. | Common Questions Predominate. .................................................. | 24 |
|  | | 2. | A Class Action Is a Superior Mechanism. ................................... | 25 |
| III. | | PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL. .................... | 26 |
| IV. | | THE NOTICE AND CLAIM FORM ARE APPROPRIATE. .............................................. | 27 |
| **CONCLUSION** ............................................................................................................................ | | | | **28** |

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    **PAGE(S)**

*Alhassid v. Bank of Am., N.A.*,
    307 F.R.D. 684 (S.D. Fla. 2015) ................................................................................22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................23, 24, 26

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ...........................................................................13, 19

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ........................................................................ *passim*

*Busby v. JRHBW Realty, Inc.*,
    513 F.3d 1314 (11th Cir. 2008) ...............................................................................21

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ................................................................................20

*In re Checking Acct. Overdraft Litig.*,
    275 F.R.D. 654 (S.D. Fla. 2011) ...........................................................21, 22, 24, 25

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003) ............................................................................20

*Diakos v. HSS Sys., LLC*,
    No. 14 Civ. 61784, 2016 WL 3702698 (S.D. Fla. Feb. 5, 2016) ............................16

*Ferron v. Kraft Heinz Foods Co.*,
    No. 20 Civ. 62136, 2021 WL 1617911 (S.D. Fla. Jan. 19, 2021) ................. *passim*

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...........................................................13, 14

*Fresco v. Auto Data Direct, Inc.*,
    No. 03 Civ. 61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ...................13, 15

*Fuller v. Becker & Poliakoff, P.A.*,
    197 F.R.D. 697 (M.D. Fla. 2000).............................................................................20

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)...................................................................................................20

*Giles v. Ireland*,
    742 F.2d 1366 (11th Cir. 1984) ...............................................................................23

*Holmes v. Continental Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ........................................................................................23, 24

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994)..........................................................................................13

*Ibrahim v. Acosta*,
   326 F.R.D. 696 (S.D. Fla. 2018)..............................................................................................23

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) .................................................................................................25

*Jairam v. Colourpop Cosmetics, LLC*,
   No. 19 Civ. 62438, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020)............................................27

*Johnson v. NPAS Sols., LLC*,
   No. 18 Civ. 12344, 2020 WL 5553312 (11th Cir. Sep. 17, 2020)....................................10, 11

*Just. v. Rheem Mfg. Co.*,
   318 F.R.D. 687 (S.D. Fla. 2016)..............................................................................................22

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ...............................................................................................25

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................................16, 19

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
   311 F.R.D. 688 (S.D. Fla. 2015)..............................................................................................21

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) ...............................................................................................22

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) .........................................................................................24, 25

*Sims v. Montgomery Cnty. Comm'n*,
   766 F. Supp. 1052 (M.D. Ala. 1990) .......................................................................................24

*Smith v. Wm. Wrigley Jr. Co.*,
   No. 09 Civ. 60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ................................. *passim*

*In re Smith*,
   926 F.2d 1027 (11th Cir. 1991) ...............................................................................................14

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004)..............................................................................................21

*Torres v. Bank of Am. (In re Checking Account)*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................14

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................................24

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ............................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..........................................................................................20, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir.2005)......................................................................................16

*Wynn v. Dixieland Food Stores, Inc.*,
   125 F.R.D. 696 (M.D. Ala. 1989) (certifying class of Black applicants and
   employees raising section 1981 claims, finding Rule 23(b)(2) "particularly
   applicable to employment discrimination class actions").....................................23

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................... *passim*

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13:10 (5th ed.
   2017) .......................................................................................................................12

Manual for Complex Litifation (Third) (1995)............................................................14

Manual for Complex Litigation (Fourth) (2021) .........................................................13

U.S. Citizenship & Immigration Servs., Approximate Active DACA Recipients:
   Country of Birth As of February 28, 2019,
   https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%
   20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/2
   _Approximate_Active_DACA_Recipients_Demographics_-
   _Feb_28_2019.pdf. .................................................................................................17

**INTRODUCTION**

Plaintiff David Rodriguez, on behalf of himself and those similarly situated, respectfully submits for the Court's preliminary approval a proposed settlement with The Procter & Gamble Company ("Defendant" or "P&G") (collectively, the "Parties").  Mr. Rodriguez brought this case to challenge a hiring practice that blocked thousands of applicants with federal work-authorization from competing for internships and jobs at P&G because of their citizenship status. The proposed settlement of this important civil rights class action remedies the precise policy and practice that Plaintiff challenged thereby leveling the playing field for tens of thousands of non-U.S. citizens who were previously barred from employment consideration by P&G solely because of their citizenship status.  In addition to the significant policy change from which Class Members and countless future non-citizens will benefit, the settlement requires P&G to pay $1,500,000 to establish a class fund for individual payments to eligible Class Members as well as provide Class Members with specific guidance on how to advance in the competitive P&G hiring process.  The settlement also requires P&G to pay $80,000 to cover the cost of settlement administration and $1,900,000 in attorneys' fees and costs.

 As set forth below, the Settlement Agreement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval under federal law.  Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement Agreement, attached as Exhibit 1 to the Declaration of Ossai Miazad ("Miazad Decl.")[1]; (2) conditionally certify the proposed settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23; (3) appoint Plaintiff as Class Representative and Outten & Golden LLP ("O&G"), the Mexican American Legal Defense and Educational Fund ("MALDEF"), and Cimo Mazer Mark

---

[1]     Unless otherwise indicated, all Exhibits are attached to the Miazad Declaration and all capitalized terms have the definitions set forth in the Settlement Agreement.

PLLC ("CMM") (together, "Plaintiff's Counsel") as Class Counsel; and (4) approve the proposed Court-Authorized Notice and Claim Form ("Notice and Claim Form"), attached as Exhibit 2, and authorize their distribution.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

**I.    <u>Pre-Suit Outreach</u>**

Plaintiff's Counsel, who are well-aware of the complexity of cases like this one and the value of early collaborative settlement discussions, sent P&G a letter in August 2015, after substantial investigation, advising it of Plaintiff's claims.  Miazad Decl. ¶ 8.  After it became clear that the Parties were unable to arrive at a pre-suit resolution, Plaintiff filed suit.  *Id.*

**II.    <u>Overview of Litigation</u>**

Plaintiff filed his Class Action Complaint on July 17, 2017, alleging a single count of alienage discrimination under Section 1981 on behalf of himself and a similarly-situated class of applicants who had federal work authorization but who were not U.S. citizens or nationals, refugees, asylees or lawful permanent residents, and were denied the opportunity to compete for jobs at P&G pursuant to the company's facially discriminatory policy.  ECF No. 1 (Comp.) ¶¶ 1, 10-11, 36.  P&G moved to dismiss Plaintiff's complaint on August 28, 2017, under Federal Rule of Civil Procedure 12(b)(6), ECF No. 17 (Mot. to Dismiss), which Plaintiff opposed on September 25, 2017, ECF No. 22 (Opp. to Mot. to Dismiss), and which the Court denied on March 30, 2018.  ECF No. 49 (Order Denying Mot. to Dismiss).

Following the Court's Order denying P&G's motion to dismiss, P&G filed an Answer to Plaintiff's Complaint on April 23, 2018.  ECF No. 53.  Shortly thereafter, pursuant to the Court's mandatory mediation program, the parties attended mediation, with JAMS mediator Scott Silverman, in Miami, FL on August 9, 2018.  *See* ECF No. 36 (Mediation Order).  The Parties

were unable to reach a resolution at mediation and continued to litigate the matter.  *See* ECF No. 66 (Mediation Report).

From August 2017 to December 2020, the Parties vigorously litigated this case.  Miazad Decl. ¶ 9.  During this time, the Parties engaged in substantial written discovery.  At the threshold, they negotiated a robust electronic discovery stipulation, which they filed with the Court on January 4, 2018, ECF No. 39 (ESI Stipulation), and a confidentiality stipulation, which was filed with the Court on August 6, 2018.  ECF No. 65 (Protective Order).  After these agreements were in place, the Parties engaged in full written discovery of Plaintiff, production by P&G of over 55,000 documents, a full-day deposition of Plaintiff Rodriguez and the deposition of a Federal Rule of Civil Procedure 30(b)(6) witness, P&G's Talent Supply Leader covering over 11 topics.  Miazad Decl. ¶ 10.[2]

Throughout the discovery period, the Parties exchanged multiple correspondence and engaged in dozens of meet and confers.  While the Parties were successful in resolving (or narrowing) many of their disputes, Plaintiff invoked the Court's assistance to resolve a specific dispute relating to the scope of Defendant's production of data.  *See* ECF No. 67 (Plaintiff's Notice of Hearing).  On August 14, 2018, Plaintiff raised the dispute relating to the scope of P&G's production with Magistrate Judge Torres, which P&G opposed.  *Id.*  The Parties attended a lengthy discovery conference on September 28, 2018 with Magistrate Judge Torres where they comprehensively argued their disputes before the Court.  *See* ECF Nos. 68-69 (Minute Entries Regarding Hearing).  Magistrate Judge Torres ordered P&G to produce the requested documents,

---

[2]     Plaintiff amended his Complaint on November 6, 2018 to add Plaintiff Marat Papazian. ECF No. 72 (First Am. Compl.).  Plaintiff Papazian produced written discovery and was deposed on March 8, 2019.  Miazad Decl. ¶ 11.  However, Plaintiff Papazian voluntarily dismissed his claims on May 11, 2019.  ECF No. 84 (Mot. to Withdraw Plaintiff).  Magistrate Judge Torres granted the motion to withdraw Plaintiff Papazian on May 7, 2019.  ECF No. 102 (Order Granting Motion to Withdraw).

in particular, ESI regarding P&G's hiring policy, including a class list identifying all potential putative class members.  Miazad Decl. ¶ 12.

Following the close of discovery, on April 12, 2019, Plaintiff filed his Motion for Class Certification.  ECF No. 85-87 (Mot. for Class Cert.), which P&G opposed.  ECF No. 107 (Opp. to Mot. for Class Cert.).  On April 15, 2019, the Court referred Plaintiff's Motion for Class Certification to Magistrate Judge Torres.  ECF No. 94 (Minute Entry Referring Plaintiff's Mot. to Certify Class).  On May 10, 2019, P&G filed a Motion for Summary Judgment, ECF No. 106 (Mot. for Summary Judgment), which Plaintiff opposed, ECF No. 111 (Opp. to Mot. for Summary Judgment), and the Court denied on June 10, 2020.  ECF No. 142 (Order Denying Mot. for Summary Judgment).  During this time, the Parties also prepared extensively for trial pursuant to the deadlines set forth in the Parties' joint scheduling report.  ECF Nos. 55, 57 (Joint Scheduling Report).  In anticipation of trial deadlines, the Parties negotiated deposition designations, exchanged exhibit and witness lists, and partially briefed motions *in limine*, ECF Nos. 129-30 (Defendant's and Plaintiff's Motions *in Limine*), until the Court set aside the trial date and related deadlines in light of the pending class certification and summary judgment motions.  *See* ECF No. 132 (Order Cancelling Trial).

Following the Court's Order denying summary judgment, on July 2, 2020, P&G moved for interlocutory review of the district court's decision under 28 U.S.C. § 1292(b).  ECF No. 143 (Motion to Certify Summary Judgment Order for Interlocutory Appeal).  Following the parties' complete briefing on the matter and oral argument on August 26, 2020, ECF No. 154 (Minute Entry Regarding Hearing), the Court denied P&G's motion for interlocutory review on November 6, 2020.  ECF No. 155 (Order Denying Mot. for Interlocutory Appeal).  In light of its Order resolving Defendant's motion for summary judgment, the Court issued an order lifting the stay that it had previously placed on trial related deadlines.  ECF No. 156 (Order Lifting Stay).

On February 19, 2021, the Parties advised the Court that they would attend mediation on March 2, 2021.  ECF No. 157 (Notice of Mediation) and subsequently provided updates of their efforts to settlement the matter.  *See* ECF Nos. 158-160 (Notice of Continuing Settlement Discussions).  The Parties attended a status conference on April 26, 2021 to appraise the Court of the status of settlement conversations, ECF No. 162-163 (Minute Entries Regarding Status Conference), and filed a joint notice setting forth a briefing schedule for settlement approval on June 1, 2021.  ECF No. 164 (Joint Notice).

III.   **Settlement Negotiations**

Since Plaintiff's initial attempt to resolve the case pre-suit and the Court-mandated mediation on August 9, 2018, the Parties participated in numerous telephone and email conversations about the possibility of settlement discussions.  Miazad Decl. ¶ 13.  In January 2021, the Parties agreed to attend mediation before David Geronemus, a well-respected employment and class action mediator.  *Id.* ¶ 14.  In advance of mediation, the Parties had several meet and confers to discuss topics relevant to settlement and submitted detailed mediation statements outlining their respective evaluations of the strengths and weaknesses of the claims at issue.  *Id.* ¶ 15.  Plaintiff also conducted a preliminary damages analysis for purposes of settlement negotiations.  *Id.*

On March 2, 2021, the Parties participated in a day-long mediation with Mr. Geronemus.  *Id.* ¶ 16.  Although the Parties made significant progress, after concluding a full day of arm's-length negotiations, spanning over twelve hours, they were unable to reach a resolution but agreed to continue negotiating with the assistance of Mr. Geronemus.  *Id.* ¶ 17.  The Parties continued to negotiate and reached an agreement in principle as to the structure of the settlement on or around June 1, 2021.  *Id.* ¶ 18; *see* ECF No. 164 (Notice Regarding Settlement Discussions).  Over the next approximately two months, the Parties negotiated a detailed

Settlement Agreement.  Miazad Decl. ¶ 18; *see* ECF No. 164 (Notice Regarding Settlement Discussions).  On or about July 14, 2021, the Parties executed the Settlement Agreement. Miazad Decl. ¶ 18; *see also* Ex. 1.

## SUMMARY OF THE SETTLEMENT TERMS

I.  **Programmatic Relief**

The Settlement Agreement provides that P&G will implement substantive changes to its policies and practices.  Specifically, P&G's affirmative obligations are to:

1) Revise its policy to allow for work-authorized non-U.S. citizens, specifically DACA recipients, Temporary Protected Status ("TPS") holders, individuals granted Deferred Enforced Departure ("DED"), Violence Against Women Act ("VAWA") self-petitioners and their derivatives, and U and T visa holders and their derivatives, to apply for employment;

2) Revise its online application to:

   a) Add the following to its online FAQs regarding the application and hiring process: "DACA recipients (and the other categories defined as work authorized, non-U.S. citizens) are eligible for employment if otherwise qualified."

   b) Ask only the following two questions regarding immigration-related issues:

      - "Are you currently legally authorized to work in the country where this role is located?"

      - "Are you currently holding an immigration status (such as an F-1) that requires an employer to sponsor you now or in the future? [click here for information related to this question]"

   c) Add a question and answer to its application help page FAQs that makes clear that DACA recipients (and others as defined as work authorized, non-U.S. citizens) are eligible for employment if otherwise qualified and that they should not answer "yes" to the question "Are you currently holding an immigration status (such as an F-1) that requires an employer to sponsor you now or in the future?";

3) Train interviewers and recruiters about citizenship discrimination and instruct these employees not to ask candidates any questions related to immigration status or employment authorization;

4) Provide a list of FAQs to interviewers and recruiters that will instruct them how to respond properly to candidate questions about immigration status and/or work authorization.  FAQ responses will include an explanation that DACA recipients (and others defined as work authorized, non-U.S. citizens) will be eligible to work if otherwise qualified;

5) Provide information in the Notice about where Class Members can find information about available jobs and internships at P&G, instructions for creating accounts in the P&G Career Portal, and specifically note that DACA recipients (and others defined as work authorized, non-U.S. citizens) are eligible for employment at P&G;

6) Provide Class Members who submit a Claim Form with guidance on how to advance in the hiring process, including tips and tutorials on the main stages; and

7) Provide Class Counsel with a list of universities or colleges where P&G currently recruits and add universities per Class Counsel's guidance.

*See* Ex. 1 (Settlement Agreement) § 3.3(A)-(C).

## II. **Monetary Relief**

Additionally, P&G has agreed to pay $1,500,000.00 to Class Members, up to $80,000.00 in settlement administration costs, and up to $1,900,000.00 in attorneys' fees and costs, for a total payment of $3,480,000.00, in addition to the costs of implementing the programmatic relief. *See id.* § 3.1(A)-(G).

## III. **Class Members**

The Settlement Agreement defines the Settlement Class as:

Any person who applied for an internship or entry-level position with P&G between July 17, 2013 and the date of preliminary approval and who meets <u>all</u> of the following criteria:

- Filed an online application with P&G for an internship or entry-level position during the Class Period;

- The application was rejected by P&G;

- Met all of the non-immigration criteria required by P&G for the position for which the person applied;

- Was not a U.S. citizen, permanent resident, asylee, or refugee at the time of applying to P&G;

- Had authorization to work in the U.S. at the time of the application;

- Did not require an employment-based visa petition to work in the U.S. at the time of applying to P&G or when the applicant expected to begin working at P&G; and

- At the time of filing the application, was not the holder of an F or M non-immigrant visa, which could require an employer petition in the future.

*Id.* § 3.2.

In addition, the Settlement defines Relief Class Members as all Class Members, as defined above, for whom P&G is able to provide the Settlement Administrator with contact information (either an address or email), or for whom P&G is able to provide some identifying information (for example, their names) and the Settlement Administrator can obtain contact information (either an address or email) that was valid during at least some part of the Class Period. *Id.* § 1.26.[3]

**IV.    Individual Class Member Relief**

P&G has agreed to pay $1,500,000.00 into a Settlement Fund.  *Id.* § 3.1(A)-(B).  The Settlement Fund will be distributed in equal pro rata shares to eligible Settlement Class Members who submit a timely Claim Form and related documentation demonstrating that they meet the Class Definition. *Id.* § 3.4(A).  In addition to sharing in a pro rata distribution from the Settlement Fund, P&G will provide Class Members who submit a verified Claim Form with information about available jobs and internships at P&G, guidance on how to advance in the hiring process (including tips and tutorials), and instructions for creating accounts in the P&G Career Portal. *Id.* § 3.3(A)(3)-(4).

---

[3]    P&G does not have complete records of applicant data for the period 2014 to 2016.  As a result, any eligible class member from this period for whom contact information cannot be recovered and notice served will not release their legal claims pursuant to the Settlement Agreement.  *Id.* § 5(B) (providing that release of claims for damages applies only to Relief Class Members).

P&G does not maintain precise immigration status information for applicants, and the data provided by P&G regarding class size is overinclusive.  Miazad Decl. ¶ 19.  Based on data and information supplied by P&G, the Parties estimate that between 60,000 and 75,000 intern and entry-level applicants were denied employment by P&G based on their disqualifying response to its citizenship question.  *Id.*  This figure is substantially overinclusive because it includes individuals who may have not had authorization to work in the United States at the time of their application, holders of non-immigrant visas (including F-1 visa holders who are not entitled to monetary relief), individuals that required employment-based visa petitions to work in the United States, and/or individuals who had their application rejected based their response to a different application question.  *Id.* ¶ 20.  In Plaintiff's best approximation between 10,000 and 15,000 eligible Class Members will receive the settlement notice.  *Id.*

## V.    Class Member Releases

All Class Members who do not exclude themselves from the settlement will agree to the following release provisions in the Settlement:

> By operation of the entry of Final Approval Order, and except as to such rights or claims as may be created by this Agreement, Plaintiff and each Class Member shall release P&G from all claims, demands, causes of action, and liabilities, known and unknown, that he/she had, have, or may have under any equitable theory (including any claim for injunctive relief or declaratory judgment), against P&G arising from, relating to, or concerning allegations that were or could have been asserted in the Class Action Complaint, including but not limited to any claim related to P&G's alleged denial of Class Members' job or internship application based on alienage, lack of U.S. citizenship, national origin, work authorization, and/or immigration status under 42 U.S.C. Section 1981 or any other federal, state, or local law, regulation, or ordinance.

Ex. 1 (Settlement Agreement) § 5(A).

In addition, all Relief Class Members, defined as those for whom P&G is able to provide the Settlement Administrator with contact information or for whom P&G is able to provide some identifying information and the Settlement Administrator can obtain contact information, who do

not exclude themselves from the settlement will agree to the following release provision in the

Settlement:

> In addition to the full scope of the release set forth in Section 5(A), upon entry of
> the Final Approval Order, Plaintiff and each Relief Class Member shall release
> P&G from all claims, demands, causes of action, and liabilities, known and
> unknown, that he/she had, have, or may have under any legal theory, including
> any claim for monetary damages (including claims for back pay, economic
> damages, compensatory damages, and punitive damages) against P&G arising
> from, relating to, or concerning allegations that were or could have been asserted
> in the Class Action Complaint, including but not limited to any claim related to
> P&G's alleged denial of Class Members' job or internship application based on
> alienage, lack of U.S. citizenship, national origin, work authorization, and/or
> immigration status under 42 U.S.C. Section 1981 or any other federal, state, or
> local law, regulation, or ordinance.
>
> The releases in this Section 5 include any and all claims for attorneys' fees and
> costs related to this Action and the settlement of this Action, except as otherwise
> set forth in this Agreement.

*Id.* § 5(B)-(C).

## VI.   **Attorneys' Fees, Costs, and Service Award**

Plaintiffs will seek Court approval of an award of no more than $1,900,000.00 for

attorneys' fees including actual litigation expenses and costs.  *See id.* § 3.5.  This amount was

negotiated by the Parties separately from the remainder of the Settlement and after the material

terms were agreed upon, and will be paid by P&G in addition to the agreed-to Settlement Fund.

Miazad Decl. ¶ 21.

Additionally, the Settlement Agreement allows Plaintiff to reserve the right to file a

motion with the Court seeking approval of a service award of up to $20,000.00 to be paid from

the Gross Settlement Fund, in light of the pending *en banc* petition filed in response to the

decision regarding service awards in *Johnson v. NPAS Sols., LLC*, No. 18 Civ. 12344, 2020 WL

5553312 (11th Cir. Sep. 17, 2020).  Ex. 1 (Settlement Agreement) § 3.6(A).  Mr. Rodriguez has

been instrumental in the settlement achieved for Class Members, and has devoted time and

energy in the last six years to securing this result at substantial personal cost and risk.  Miazad

Decl. ¶ 22.  The risk Plaintiff assumed in attaching his name to this action is unusually high, especially compared to more typical class action lawsuits.  As a DACA recipient he is unfortunately an attractive target for harassment and vulnerable to potential immigration consequences related to their immigration status within the United States.  *Id.* ¶ 23. Additionally, he complied with an invasive discovery process, responding to over 40 discovery requests and sitting for a full-day deposition.  *Id*. ¶ 24.  Plaintiff also spent dozens of hours in regular communication with Plaintiff's Counsel by phone and email to provide input, review documents, answer questions, and stay updated on case developments.  *Id.* ¶ 25.  Plaintiff further provided significant insight and information in preparing for the Parties' mediation, as well as review and input on the terms of the Settlement Agreement.  *Id.* ¶ 26.  The Parties agree that in the event the Eleventh Circuit reconsiders and reverses the *Johnson* decision prior to the pro rata distribution of the Settlement Fund or after the distribution but prior to the *cy pres* payment of residual uncashed checks, Plaintiff will have an opportunity to file a motion for a service award. Ex. 1 (Settlement Agreement) § 3.6.  In order to provide sufficient notice of the prospective service award motion, the Parties' draft Notice of Settlement advises eligible Class Members that Plaintiff may make a request for a service award.  *See* Ex. 2 (Proposed Notice).

The Court need not decide attorneys' fees and costs or the services award now; Plaintiff will move for Court approval with the Motion for Final Approval.

## VII.    **Unclaimed Funds**

The Settlement Agreement provides that funds from any checks uncashed after the 120-day check cashing period, or 60 days after the date of issuance, whichever is longer, will be directed to a *cy pres* recipient, selected by Plaintiff with the consent of P&G, that works for the benefit of the DACA population and the broader immigrant community unless a motion for service award is pending in which case the distribution will not be made until the Court rules on

that motion.  Ex. 1 (Settlement Agreement) § 3.1(H).  There is no reversion to P&G from

uncashed checks.

**VIII.**   **Settlement Administrator**

P&G has agreed to pay the costs of administering the settlement, including the cost of

distribution of notice, tax reporting, and other duties assigned by the Parties to the settlement

administrator, up to $80,000.00.  *Id.* § 3.1(G).  To the extent the cost of administration exceeds

$80,000.00, the remainder will be paid from the Settlement Fund prior to its pro rata distribution.

*Id.* § 3.1(A).

## CLASS ACTION SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of notice of settlement to all affected class members by first class mail and electronic mail; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Fed. R. Civ. P. 23(e) & advisory committee's note to 2018 amendment; *see also* 4 Herbert B.

Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 13:10 (5th ed. 2017).  This

process safeguards class members' procedural due process rights and enables the Court to fulfill

its role as the guardian of the class' interests.  With this motion, Plaintiff requests that the Court

take the first step: grant preliminary approval of the Settlement Agreement, conditionally certify

the settlement class, approve the Parties' proposed Notice and Claim Form, and order their

distribution.

## ARGUMENT

I.  **Preliminary Approval of the Class Action Settlement Is Appropriate**

The law favors compromise and settlement of class action suits.  *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007) (noting that there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex" (quoting *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002))).  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  Review of a class settlement proceeds in steps.  First, "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation (Fourth) § 21.632 (2021).  "At the preliminary-approval step, the Court is required to 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'"  *Fresco v. Auto Data Direct, Inc.*, No. 03 Civ. 61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).  Then, "following appropriate notice to the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement."  *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.634.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.  Newberg on Class Actions § 13:10.  "A proposed settlement should be preliminarily approved if it 'is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement."  *Fresco*, 2007 WL 2330895, at *4 (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)).  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.  *See Ferron v. Kraft Heinz Foods Co.*, No. 20

13

Civ. 62136, 2021 WL 1617911, at *4 (S.D. Fla. Jan. 19, 2021).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id.* at *4 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotation marks omitted).  In assessing whether a settlement is "fair, adequate, and reasonable . . . the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'"  *Figueroa*, 517 F. Supp. 2d at 1319-20 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)); *Ferron*, 2021 WL 2940240, at *5 ("In evaluating a proposed class action settlement, the Court will not substitute its business judgment for that of the parties; the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." (quoting *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011)).

The first step in the settlement process simply allows notice to be issued to the class and for class members to object to or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.  In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.*  These are:  (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Bennett*, 737 F.2d at 986.  Although the Court need not evaluate the *Bennett* factors to conduct its initial evaluation of the settlement, for purposes of evaluating the settlement's fairness, it is useful for the Court to consider these criteria.

Here, the relevant *Bennett* factors weigh in favor of preliminary approval.

14

A.      **Plaintiff Faced Significant Risk at Trial (Factor 1).**

Courts first consider "the likelihood of success at trial." *Bennett*, 737 F.2d at 986.  Where

"Plaintiffs have advanced a novel claim," the "significant risks from continued litigation . . .

favors preliminary approval of the settlement." *Fresco*, 2007 WL 2330895, at *6.  Class actions

under Section 1981, like this one, are subject to considerable risk.  Miazad Decl. ¶ 27.  This is

especially true here, where Plaintiff's alienage discrimination claim is untested.  *Id.*  While the

Court denied P&G's motion for summary judgment, there remain significant obstacles to

obtaining full recovery.  *Id.*  P&G strongly contests the legal and factual basis for Plaintiff's

claims.  While Plaintiff believes he could ultimately defeat P&G's defenses and establish

liability, this would require favorable outcomes at trial, and on appeal, all of which are inherently

uncertain.  *Id.*

Notably, Plaintiff's motion for class certification remains pending, and class certification

in litigation is not assured.  *See Fresco*, 2007 WL 2330895, at *6 (risk that "the Court would find

that the Plaintiffs' proposed class could not be certified for trial purposes" supported preliminary

approval).  Although Plaintiff is confident that the matter will be certified, P&G vigorously

contested the motion arguing among other things that Plaintiff lacked standing, that Plaintiff's

claim for declaratory and injunctive relief was moot, that Plaintiff's claim was not typical of

those of other Class Members, and that Plaintiff cannot identify Class Members from P&G's

data with certainty, presenting ascertainability and manageability issues.  *See* ECF No. 107.

Should the Court certify the class, P&G would likely later challenge certification and move to

decertify, requiring another round of briefing.

In contrast to these known risks, the proposed settlement eliminates the uncertainty

regarding Plaintiff's success and guarantees class members prompt relief.  "The likelihood of

success on the merits is weighed against the amount and form of relief contained in the

settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). Here, the settlement ensures that P&G will make changes to the precise hiring policy at the heart of Plaintiff's claim, and further creates a class fund of $1,500,000. This factor therefore weighs in favor of preliminary approval.

**B.      The Settlement Is Fair Given the Range of Possible Recovery (Factors 2, 3).**

Courts next evaluate "the range of possible recovery" and "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable." *Bennett*, 737 F.2d at 986. The second and third *Bennett* factors "compare the benefits provided by the settlement to the benefits that could have been received if the case had proceeded to trial." *Diakos v. HSS Sys., LLC*, No. 14 Civ. 61784, 2016 WL 3702698, at *4 (S.D. Fla. Feb. 5, 2016). Specifically, "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir.2005)). While the damages associated with P&G's refusal to employ Plaintiff and Class Members are speculative, given that their employment was not assured, Plaintiff has secured a substantial settlement including a Settlement Fund of $1,500,000 and robust programmatic relief. Class Members will be entitled to a pro rata share of the Settlement Fund. While the amount distributed to each Class Member will depend on the number of claim forms submitted, Plaintiff's Counsel estimate that each Class Member will receive at least $1,500 if up to 1,000 individuals submit valid claims. Miazad Decl. ¶ 28. This is an excellent recovery, given that Class Members were denied employment at the start of a highly competitive multi-stage application and hiring process and whether they would have been hired, or otherwise entitled to backpay, is speculative.[4] *Id.* ¶ 29.

---

[4]      P&G's rate of hire from its intern applicant pool is approximately 1% and it is even lower for entry level jobs at approximately 0.33%. *See* Decl. of Scott Isenhart (ECF No. 104-1) ¶¶ 6, 14.

It is also an excellent benefit given that Plaintiff did not move for class certification of actual and economic damages under Section 1981 because of the highly individualized inquiry that would be involved and limited the classwide claims under Section 1981 to only request equitable and injunctive relief and nominal damages.  *Id.* ¶ 30; ECF No. 85 (Pl.'s Mot. for Class Cert.) at 12.

Further, the proposed Settlement confers significant value to the Class through programmatic changes to P&G's hiring practices that are at the heart of Plaintiff's Section 1981 challenge.  Under the Settlement, P&G has agreed to revise its citizenship policy to permit employment work-authorized non-U.S. citizens—including DACA recipients, TPS holders, individuals granted DED, VAWA self-petitioners and their derivatives, U visa holders and their derivatives, and T visa holders and their derivatives—and to revise its application and train its recruiters and interviewers to ensure that its new eligibility requirements are complied with.  In other words, P&G will *not* consider DACA (and other related categories) as a factor in screening applicants.  All DACA recipients nationwide—not just Class Members—will benefit from this policy change which will open job opportunities previously foreclosed.  DACA recipients have a great need for access to professional opportunities and advancement.[5]  As a large U.S. employer, the programmatic relief offered by P&G is a significant and valuable economic benefit to Class Members (and DACA recipients nationwide) and is likely better than what could be obtained by protracted litigation and trial.

The substantial economic and programmatic relief achieved by the Settlement favor preliminary approval.

---

[5]      More than 800,000 individuals have been approved under DACA in the United States. U.S. Citizenship & Immigration Servs., *Approximate Active DACA Recipients: Country of Birth As of February 28, 2019* at 5, https://www.uscis.gov/sites/default/files/USCIS/Resources/ Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/2_ Approximate_Active_DACA_Recipients_Demographics_-_Feb_28_2019.pdf.

**C.      Litigation Would be Complex, Costly, and Long (Factor 4).**

Courts also consider "the complexity, expense and duration of litigation."  *Bennett*, 737 F.2d at 986.  This case is extremely complex, with thousands of putative Class Members, and claims and defenses involving a fact-intensive and novel overlap between Section 1981 and the country's complicated immigration and work authorization regulatory framework.  Establishing both liability and damages would require significant continued time and expense, including in the near future preparing for and attending a hearing on Plaintiff's pending motion for class certification and litigating a likely interlocutory appeal following that decision, no matter the outcome.  Miazad Decl. ¶ 31.  The Parties would then need to prepare for and face a challenging trial involving a careful inquiry into Plaintiff's claims and damages and those of the putative Class.  *Id.* ¶ 32.  Following trial, the Parties would likely litigate merits appeals.  *Id.* ¶ 33.  P&G may also seek to move to decertify the Class, triggering further issues to be heard on appeal.  *Id.* ¶ 34.  If damages had not been considered at the trial, the Parties would then turn to a heavily contested stage involving individual damages for Plaintiff and a process to address Class Member damages under Section 1981.  *Id.* ¶ 35.

By reaching a favorable settlement prior to class certification and trial, and before any appeals, Plaintiff avoids significant expenses and delay and ensures timely individual monetary and programmatic relief for the Class.

**D.      The Class Will Likely Approve of the Settlement (Factor 5).**

Courts consider "the substance and amount of opposition to the settlement."  *Bennett*, 737 F.2d at 986.  After notice is issued and Class Members have had an opportunity to be heard, the Court can fully analyze this *Bennett* factor.  However, Plaintiff notes that the settlement provides significant monetary relief for Class Members, who were blocked from consideration to work at P&G based on its facially discriminatory eligibility requirements, as well as substantial

programmatic relief, including changes to P&G's hiring practices to allow all work-authorized individuals to be considered for employment. This relief is comprehensive, and Plaintiff's Counsel are confident that Class Members will respond favorably to the settlement. Miazad Decl. ¶ 36.

> ### E.   The Parties Have Completed Sufficient Discovery to Evaluate the Claims and Defenses (Factor 6).

Finally, courts consider "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. While significant time and expense lie ahead, the Parties have completed substantial discovery and motion practice that is sufficient to recommend settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

As described above, before the Parties negotiated this Settlement, the case was litigated extensively, with numerous motions and discovery conferences, depositions, over 55,000 documents produced, several discovery disputes, and lengthy negotiations to produce comprehensive class member information. Miazad Decl. ¶¶ 9-12; *see also supra* Factual and Procedural Background. The Parties had the critical information they needed to value the case and make an informed decision on settlement. Notably, the Court's summary judgment decision clarified the issues that would continue to be litigated through trial. The Parties also engaged in several settlement discussions, and held multiple telephone conferences before and after mediation to reach agreement. *Id.* ¶¶ 13-18.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case—which they did with the assistance of an experienced mediator. Thus, this factor supports preliminary approval. *See, e.g., Ass'n For Disabled Ams., Inc.*, 211 F.R.D. at 470 ("Because the parties have expended much effort in analyzing the issues, this

Court should find that the parties are at a proper juncture with sufficient information to settle this action.").

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Bennett* factors.

## II.      Conditional Certification of the Class Is Appropriate.

For settlement purposes, Plaintiff seeks to certify the Class under Rule 23.  *See supra* Summary of the Settlement Terms; *see also* Ex. 1 (Settlement Agreement) § 2.3.  The Settlement Class satisfies Rule 23's requirements.

### A.      Numerosity Is Satisfied.

Numerosity is satisfied where there are more than forty putative class members.  *See Smith v. Wm. Wrigley Jr. Co.*, No. 09 Civ. 60646, 2010 WL 2401149, at *4 (S.D. Fla. June 15, 2010) (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)).  According to information produced by P&G, there are thousands of eligible Class Members.  Miazad Decl. ¶¶ 19-20.  The proposed Class easily satisfies this requirement.  *See Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000) (stating that parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class").

### B.      Commonality Is Satisfied.

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "[F]or purposes of Rule 23(a)(2) even a single common question will do."  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Here, all members of the Class are unified by common factual allegations and legal theories—they all were alleged to be improperly denied the opportunity to contract with P&G despite being authorized to work in the United States because of their disqualifying response to P&G's online application, in violation of Section 1981.  Where, as here, a plaintiff claims liability based on "a standardized course of conduct that affects all class members," courts routinely find commonality to be satisfied.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004); *see also Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015).  This common question is sufficient in the settlement context.  *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) (preliminarily approving settlement where "multiple questions of law and fact that center on [defendant's] class-wide policies and practices and are common to the Settlement Class"); *Ferron*, 2021 WL 1617911, at *2 (finding commonality where "[m]ultiple questions of law and fact centering on Defendant's class-wide practices are common to the Plaintiff and the Settlement Class, are alleged to have injured all members of the Settlement Class in the same way, and would generate common answers central to the viability of the claims were this case to proceed to trial").

**C.    Typicality Is Satisfied.**

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)).  Typicality is satisfied when the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory as the claims of the class."  *Smith*, 2010 WL 2401149, at *4.  "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not

21

be substantially identical." *Just. v. Rheem Mfg. Co.*, 318 F.R.D. 687, 695 (S.D. Fla. 2016) (quoting *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 697 (S.D. Fla. 2015)).

Here, like the putative Class, Plaintiff alleges that he was denied the opportunity to contract for employment because of his response to the citizenship question in P&G's online application.  *See* Compl.  Typicality is met because Plaintiff and all putative Class Members were subjected to the same hiring policy and practice, which Plaintiff challenges.  *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 659; *Smith*, 2010 WL 2401149, at *4.

   **D.**  **Plaintiff Will Adequately Protect the Interests of the Settlement Class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 659-60.  "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).  Plaintiff meets the adequacy requirement because there is no evidence that he has interests that are antagonistic to or at odds with those of putative Class Members.  *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 660 (adequacy satisfied where there were "no conflicts of interest between the Plaintiffs and the Settlement Class").  Moreover, like all Class Members, Plaintiff was denied the opportunity to pursue employment with P&G as a result of his citizenship status, and therefore pursues the same Section 1981 claim.  In addition, Plaintiff has vigorously prosecuted this action since retaining counsel six years ago and filing this lawsuit four years ago, including through significant motion practice and discovery.

**E.      Certification Is Proper Under Rule 23(b)(2).**

Certification under Rule 23(b)(2) requires a showing that "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive or

corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P.

23(b)(2).[6]  A class is properly certified under Rule 23(b)(2) "when a single injunction or

declaratory judgment would provide relief to each member of the class."  *Ibrahim v. Acosta*, 326

F.R.D. 696, 699 (S.D. Fla. 2018) (quoting *Dukes*, 564 U.S. at 360); *see also Holmes v.*

*Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) (Rule 23(b)(2) "by its terms, clearly

envisions a class defined by the homogeneity and cohesion of its members' grievances, rights

and interests") (internal citation omitted); *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is

'the indivisible nature of the injunctive or declaratory remedy warranted. . . that the conduct is

such that it can be enjoined or declared unlawful only as to all of the class members or as to none

of them'" (internal citation omitted)).  Civil rights actions, such as this, through which plaintiffs

seek injunctive relief to remedy "unlawful, class-based discrimination are prime examples" of

certifiable Rule 23(b)(2) class actions.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614

(1997) (citations omitted).

Courts have long recognized that claims for declaratory and injunctive relief under

Section 1981 are appropriately certified under Rule 23(b)(2).  *See Wynn v. Dixieland Food*

*Stores, Inc.*, 125 F.R.D. 696, 700 (M.D. Ala. 1989) (certifying class of Black applicants and

employees raising section 1981 claims, finding Rule 23(b)(2) "particularly applicable to

employment discrimination class actions") (citing *Giles v. Ireland*, 742 F.2d 1366, 1372 (11th

---

[6]      The Advisory Committee Notes explain that "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief *or serves as a basis for later injunctive relief.*"  Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (emphasis added).

Cir. 1984)); *Holmes*, 706 F.2d at 1152 (noting in Section 1981 and Title VII case that "[c]ivil

rights class actions . . . are generally treated under subsection (b)(2) of Rule 23"); *Sims v.

Montgomery Cnty. Comm'n*, 766 F. Supp. 1052, 1081 (M.D. Ala. 1990) (noting certification of

(b)(2) class of past, present and future Black Sheriff's Department officers raising discrimination

claims).

Here, Plaintiff seeks approval of a Settlement that includes substantial injunctive relief

through Class-wide changes to P&G's hiring practices.  These programmatic changes align with

the purposes of Rule 23(b)(2) class actions.  Accordingly, certification under 23(b)(2) is

appropriate.

### F.      Certification Is Also Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also

that they "predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v.

Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem*, 521 U.S. at 623 (internal quotation

marks omitted)).  For the purposes of settlement, these requirements are met.

### 1.      Common Questions Predominate.

Predominance requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact

on every class member's effort to establish liability that is more substantial than the impact of

individualized issues in resolving the claim or claims of each class member."  *In re Checking

Acct. Overdraft Litig.*, 275 F.R.D. at 660 (quoting *Sacred Heart Health Sys., Inc. v. Humana

Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks

omitted)).  The essential inquiry is whether "'the issues in the class action that are subject to

generalized proof and, thus, applicable to the class as a whole, [] predominate over those issues that are subject only to individualized proof.'" *Smith*, 2010 WL 2401149, at *5 (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997))).  Where plaintiffs are unified by a common legal theory and by common facts, predominance is satisfied.  *See Ferron*, 2021 WL 1617911, at *3 ("Rule 23(b)(3) is satisfied because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for the members of the Settlement Class in a single, coordinated proceeding is superior to thousands of individual lawsuits addressing the same legal and factual issues.").

Here, Plaintiff's common contention—that P&G's hiring policy denied employment opportunities to otherwise qualified applicants based only on their immigration status in violation of Section 1981—predominates over any issues affecting only individual class members.  *See id.* (finding that common issues predominated since "each member of the Settlement Class ha[d] claims that ar[o]se from the same or similar alleged Kraft practices as well as the same legal theories"); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 660 (finding that common issues predominated because "Settlement Class Member's claims ar[o]se from the same or similar alleged BofA policies and practices and the same legal theories").

### 2.   A Class Action Is a Superior Mechanism.

Rule 23(b)(3) next considers "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs" *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1183-84 (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir. 2004)).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the

desirability of concentrating the litigation of the claims in the particular forum.[7]  Fed. R. Civ. P.

23(b)(3).

       Here, certification of the settlement Class is "superior to other available methods for

fairly and efficiently adjudicating this controversy . . . [because] if the Proposed Class is not

certified, it is likely that potential class members would lack incentive to pursue their claims

individually due to the small awards involved."  *Smith*, 2010 WL 2401149, at *5.  Plaintiff and

members of putative Class have limited financial resources with which to prosecute individual

actions, especially where damages are speculative and difficult to calculate.  Employing the class

device here will achieve economies of scale for putative Class Members, conserve judicial

resources, and preserve public confidence in the system by avoiding repetitive proceedings and

inconsistent adjudications.

### III.     Plaintiff's Counsel Should Be Appointed as Class Counsel.

       O&G, MALDEF, and CMM should be appointed as Class Counsel.  Rule 23(g), which

governs the standards and framework for appointing class counsel, sets forth four criteria the

district court must consider in evaluating the adequacy of proposed counsel: (1) "the work

counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in

the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel

will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also

"consider any other matter pertinent to counsel's ability to fairly and adequately represent the

interests of the class[.]"  Fed. R. Civ. P. 23(g)(1)(B).  "No single factor should necessarily be

---

[7]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in evaluating a settlement class.  *See Amchem*, 521 U.S. at 620.

determinative in a given case."  Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.

Plaintiff's Counsel satisfy these criteria.  They have done substantial work identifying, investigating, litigating, negotiating, and settling Plaintiff's and putative Class Members' claims. Miazad Decl. ¶¶ 8-18.  Plaintiff's Counsel have substantial experience prosecuting and settling employment class actions, including discrimination cases like this one.  Miazad Decl. ¶¶ 6-7. Plaintiff's Counsel are well-versed in the caselaw concerning immigration-related discrimination in employment.  *Id.* ¶¶ 4-7; Decl. of Nina Perales (ECF No. 87-2) ¶¶ 4-12; Decl. of Jason S. Mazer (ECF No. 87-3) ¶¶ 1-4.

## IV.    **The Notice and Claim Form Are Appropriate.**

The Notice and Claim Form fully comply with due process and Rule 23(e).  Courts find that notices are sufficient when they "describe[] 'the substantive claims . . . [and] contain[] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  *Ferron*, 2021 WL 2940240, at *6 (quoting *Jairam v. Colourpop Cosmetics, LLC*, No. 19 Civ. 62438, 2020 WL 5848620, at *4 (S.D. Fla. Oct. 1, 2020)).  In *Ferron*, the court approved a notice that (1) defined the class; (2) described the release and proposed distribution of the settlement fund; (3) informed class members of their rights to opt out or object and how to do so; (4) notified class members of the legal effect of not opting out; and (5) stated the class counsel's request for fees and costs.  *See id.*  The proposed Notice here contains similar information, including explaining in detail the criteria for Class membership and the required documentation to establish it.  The Notice further explains in detail the monetary and programmatic relief provided by the Settlement, provides information regarding the Fairness

Hearing, and provides for the creation of a settlement website with additional information.  *See Smith*, 2010 WL 2401149, at *6 (approving proposed notice with similar information).

The Settlement Administrator will mail and e-mail the Notice and Claim Form to Class Members (where such contact information is available), create and administer the website, take reasonable steps to obtain correct addresses of class members whose notice is returned as undeliverable, attempt re-mailing, and send reminder notices by mail and e-mail.  *See* Ex. 1 (Settlement Agreement) § 4.1.

### **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the proposed settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23; (3) appoint Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel; and (4) approve the proposed Court-Authorized Notice and Claim Form and authorize their distribution.

Dated: July 30, 2021                              Respectfully submitted,

CIMO MAZER MARK PLLC

By: */s/ Jason S. Mazer*
Jason S. Mazer
Florida Bar No. 0149871
jmazer@cmmlawgroup.com
100 SE 2nd Street, Suite 3650
Miami, FL 33131-3650
Telephone: (305) 374-6484
Facsimile: (305) 374-6489

OUTTEN & GOLDEN LLP
Patrick David Lopez
pdl@outtengolden.com
601 Massachusetts Avenue
Second Floor, West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile (202) 847-4410

28

Ossai Miazad
om@outtengolden.com
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

THE MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
Thomas A. Saenz
tsaenz@MALDEF.org
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (210) 224-5382

Nina Perales
nperales@MALDEF.org
110 Broadway, Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
Facsimile: (210) 224-5382

*Counsel for the Plaintiff*
*and Proposed Class*